HAWKINS, Presiding Justice,
for the Court:
Michael Scott Shutze, minor plaintiff, appeals from a summary judgment dismissal of his malpractice action against William L. Pace, M.D., because barred by the two-year limitation imposed by Miss.Code Ann. § 15-1-36 (Supp.1984). For the reasons stated we affirm.
FACTS
Judith Yearwood was admitted to Methodist Hospital in Hattiesburg with complaints of pelvic pain. She was 36 years old and the mother of Michael Scott Shutze, the minor plaintiff. On June 25, 1984, she was taken to an operating room at Methodist Hospital where she was placed under general anesthesia and William L. Pace, M.D., was to perform a laparoscopic examination and bilateral tubal ligation. After placing her under general anesthesia, an incision was made in her abdomen and a small scope was inserted allowing Dr. Pace to look inside. A bilateral tubal ligation is the tying of the fallopian tubes. In the operating room with Dr. Pace were two nurses and a technician. Nurse Phillip Davenport administered anesthesia. Nurse Sheila Cave was the circulating nurse when the operation began. Early in the operation, she was replaced by Nurse Faye Smith. The duties of the circulating nurse are to assist with anesthesia, position the patient, hook up the EKG, monitor and do various other duties to assist in the operating room. Katrina Broom, a surgical technician assisted Dr. Pace by handing him instruments and materials as needed during the procedure.
Four records were to be prepared as a result of the operation itself: Dr. Pace’s Progress Note, his Report of Operation, an Anesthesia Record prepared by Nurse Davenport and finally the nurse’s Operative *777 Record. The nurse’s operative record is prepared and signed by the circulating nurse. On it she includes her “observations and comments” about the operation. Once a medical record is completed, there is only one ethical and accepted method of making a change in the record. That is by drawing a line through the information to be changed and inserting the new information.
During the surgery, Ms. Yearwood’s pulse and pressure dropped and at approximately 12:25 p.m., she had no palpable pulse or blood pressure. Although resusci-tative efforts were begun, Ms. Yearwood’s brain was denied oxygen for a period of time and she suffered irreversible brain damage and was left in a coma. She never regained consciousness. The nurse’s observations of and comments about that surgery were recorded on the nurse’s operative record.
Between June 25, 1984, and June 28, 1984, Ms. Yearwood continued in a coma. Some time on June 28, 1984, another nurse, while moving Judith Yearwood to prepare her for an x-ray, negligently caused the nasotracheal tube carrying oxygen to Ms. Yearwood’s lungs to be pulled out of the trachea and then to be pushed into Ms. Yearwood’s esophagus, thus again denying Ms. Yearwood an adequate supply of oxygen. As a result, Ms. Yearwood’s brain suffered further injury. Because of the combined effect of the brain damage on June 25 and June 29, Ms. Yearwood had no evidence of brain activity and life support measures were disconnected and she died.
As required by the written standard of Methodist Hospital and the Joint Committee on Accreditation of Hospitals, the medical records of Judith Yearwood were ultimately to be collected into one place under specific guidelines and in an approved format. In this case, the records were supposedly collected and each page was supposedly numbered to make sure that every record was accounted for since it was anticipated that the records might be used in a legal proceeding. *
Subsequently, a lawsuit was filed by the plaintiff in this action against Nurse Davenport, Methodist Hospital and Dr. Pace.
As is customary in medical malpractice cases, the plaintiff’s attorneys requested and received a certified copy of the medical records relating to the treatment of Ms. Yearwood at Methodist Hospital from June 18, 1984, to the date of her death on June 29, 1984. Those medical records were certified as true and correct by Methodist Hospital. At each deposition of each physician, including Dr. Pace, a certified, num-1 ber copy of the medical records was present and referred to by all parties.
Rather than relying only on the certification of Methodist Hospital, interrogatories and requests for production were propounded to Dr. Pace in which he was requested to produce all records, notes et al from the hospitalization. In his responses, he affirmed that the certified copy of the medical records from Methodist Hospital were as follows:'
REQUEST FOR PRODUCTION NO. 4: All records, reports, nurse's notes, summaries, histories, x-rays and other tangible documents and things regarding any treatment or examination of Yearwood on or after June 18, 1984.
RESPONSE: See response to Request for Production No. 1.
REQUEST FOR PRODUCTION NO. 4: All documents, diaries and calendars kept by you, or by anyone on your behalf, to record any of the events regarding Yearwood which are relevant to this lawsuit.
RESPONSE: See response No. 1.
REQUEST FOR PRODUCTION NO. 4: All documents prepared during the operation, or as a result of any information obtained during the operation, including but not limited to logs, notes, graphs, tapes, photographs, videotapes and reports.

RESPONSE: Other than the records of Methodist Hospital, such additional information is not known to this Defendant.

Response to Request for Production No. 1 stated the following:
*778 RESPONSE: ... it is assumed that the Plaintiff has copies of all the depositions referred to and the medical records of the Methodist Hospital.
By obtaining a certified copy of the medical records and referring to them in depositions and through use of requests for production nos. 1, 4, 7 and 10, Dr. Pace plainly represented that the certified copy of the medical records were true and complete, at least to his knowledge. Dr. Pace even added in response to request for production no. 10 that other than the records of Methodist Hospital, “SUCH ADDITIONAL INFORMATION IS NOT KNOWN TO THIS DEFENDANT.’’
Perhaps, this is an appropriate point at which to mention briefly the problem which plaintiff was not aware of — the responses to requests for production were not correct because the nurse’s Operative Record was not the original record.
At approximately 3:00 p.m. on the day of the surgery, Dr. Pace called Dr. Katherine Aldridge an anesthesiologist practicing in Hattiesburg, and described the situation to her.
That afternoon, Dr. Aldridge came to the Methodist Hospital and reviewed the records. She noted that the nurse’s operative record showed an “apparent cardiac arrest.” Dr. Aldridge took the record and showed it to Dr. Pace on the afternoon of June 25 and specifically pointed out that the record showed an “apparent cardiac arrest.”
The next day, Nurse Smith and Nurse Cave went to work at the hospital. That morning, Dr. Pace saw Nurse Cave in the hallway and told her that there had been an error in the charting and that it needed to be changed. Dr. Pace told Nurse Cave that the reference in the nurse’s operative record to "apparent cardiac arrest” should be changed to “pulse lowered, but maintained at all times.”
Nurse Smith had completed the first Operative Record form. After the conversation with Dr. Pace, the report was changed. Nurse Cave, however, instead of simply drawing a line through “apparent cardiac arrest,” and inserting about it the phrase, “pulse lowered, but maintained at all times,” filled' in an entirely new Operative Record form which was identical in wording to the first, except the phrase “pulse lowered, but maintained at all times” was inserted. The phrase “apparent cardiac arrest” does not appear on the form Cave filled in.
The defense did not receive any notice or knowledge of this change until during the course of the trial of the first lawsuit.
While the first suit was pending, and following discovery, plaintiff’s counsel were advised by their employed medical experts that there was no malpractice on the part of Dr. Pace. A nonsuit was taken as to him.
In the first trial Dr. Pace testified as a witness for the plaintiff. When the record change was brought out at trial, the Hospital used Dr. Pace’s request or directive to change the Operative Record in an effort to impeach his credibility.
Following the trial, based upon some kind of special verdict which does not appear in this record, the jury found for the defendants in reference to any claim of negligence which occurred during the surgery, but in favor of the plaintiff for the occurrence on June 28, 1984, wherein Year-wood had the tracheal tube removed from her lungs and replaced in her esophagus. For this second occurrence the jury awarded plaintiff $150,000 in damages. Following trial and during the course of preparing motions for a new trial, the defendants agreed to pay the plaintiff an additional $75,000 for settlement of all claims. This was paid, and a covenant not to sue was executed as against Methodist Hospital and Nurse Phillip Davenport.
A suit was then filed against Dr. Pace, alleging malpractice in the conduct of the surgery on June 25, 1984. An answer was filed alleging several defenses, among which was a plea of statute of limitations, that the cause was barred because of Miss. Code Ann. § 15-1-36 (Supp.1984).
The trial court treated the defense as a motion for summary judgment under Rule 56 Miss.R.Civ.P., and entered summary *779 judgment dismissing the action because it was barred by this statute.
LAW
The complaint filed against Dr. Pace on September 25, 1986, makes no mention of the alteration of the nurse’s operative record, but is based solely upon allegations of negligence in his treatment of Ms. Year-wood in June, 1984.
The dispositive portion of Miss.Code Ann. § 15-1-36 (Supp.1984) reads:
§ 15-1-36. (1) No claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date of the alleged act, omission or neglect or with reasonable diligence might have been first known or discovered.
It is clear that under this section suit must be filed within two years “from the date of the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.”
Did Dr. Pace’s instructing the nurse that her record was incorrect and needed changing somehow prevent plaintiff’s counsel from discovering all of his conduct in treatment of Ms. Yearwood? There is no allegation or showing that it did.
Did the fact that Dr. Pace neglected to inform plaintiff’s counsel during discovery of this conversation with the nurse and the subsequent change somehow prevent plaintiff’s counsel from discovering all of Dr. Pace’s conduct in treatment of Ms. Year-wood? Again, there is no allegation or showing that it did.
There is no showing or allegation that had the plaintiff known of the complete facts surrounding this change in the operative record this would have had any relevance as to whether Dr. Pace was negligent in his treatment of Ms. Yearwood. Put another way, had plaintiff been fully apprised of all these facts, would this in any way tend to prove Dr. Pace was negligent in his care and treatment of Ms. Year-wood? Counsel for plaintiff make no claim to this effect.
This suit is not for some tortious interference with a prior case, but for malpractice in the care and treatment of Ms. Year-wood. On this latter score from all that appears in this record, the plaintiff would have been no better off in the malpractice suit against Dr. Pace with the information than without it.
Counsel for plaintiff state in their brief that had they known of the record change prior to trial of the first action, they would never have taken a nonsuit as to Dr. Pace. That may be true, but that is not the test.
Dr. Pace’s character, or negligence in failing to inform counsel during discovery of this change is not the test, but rather did he do something that kept them from knowing all the facts and circumstances surrounding this surgery? They make no showing or allegation that he did.
Consequently the circuit judge was correct in rendering summary judgment because the action was barred by Miss.Code Ann. § 15-1-36.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., dissents without written opinion.